UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERROL O. SMITH,
# 333785

      Petitioner,                       Civil No. 2:20-CV-12975

v.                                HON. BERNARD A. FRIEDMAN

ADAM DOUGLAS,

      Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION AND AMENDED
PETITION FOR WRIT OF HABEAS CORPUS (ECF NOS. 1, 14),
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*, AND DENYING
THE MOTION FOR AN EVIDENTIARY HEARING AND REQUEST FOR
APPOINTMENT OF COUNSEL (ECF NO. 16)**

Errol O. Smith, ("Petitioner"), confined at the Saginaw Correctional Facility

in Freeland, Michigan, filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for

first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(e). For the

reasons that follow, the petition for a writ of habeas corpus is DENIED.

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit

Court.

1

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> While this appeal arises from defendant's conviction of three counts of CSC I in 2017, the acts of criminal sexual conduct underlying those charges occurred on October 2, 1996. The victim, BB, was attacked in her home, threatened with a knife and forced to perform three sexual acts by the perpetrator. A rape kit was completed in 1996, however, defendant was not identified as the perpetrator of the attack on BB until more than 20 years after the attack when testing of BB's rape kit identified defendant through his DNA. At defendant's trial regarding the attack on BB, evidence was also introduced of a separate criminal sexual assault on a different victim, AH, that occurred in 1995. Defendant's DNA was also matched to the evidence from the assault involving AH.[1]

*People v. Smith*, No. 341977, 2019 WL 2235839, at *1 (Mich. Ct. App. May 23, 2019).

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 935 N.W.2d 330 (Mem) (Mich. 2019).

Petitioner filed a petition for a writ of habeas corpus, which was held in abeyance so that he could exhaust additional claims in the state courts. *Smith v. Winn*, No. 20-CV-12975, 2021 WL 3422376 (E.D. Mich. July 8, 2021).

---

[1] Because of the sensitive nature of the offenses, the Court will refer to the victims by their initials only as the Michigan Court of Appeals did to preserve their privacy. *See* Fed. R. Civ. P. 5.2(a).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Smith*, No. 17-004002-01-FC (Wayne Cty. Cir. Ct., Nov. 5, 2021) (ECF No. 19-3). The Michigan Court of Appeals rejected petitioner's application for leave to appeal as being untimely. *People v. Smith*, No. 361954 (Mich. Ct. App. July 5, 2022) (ECF No. 19-4, PageID.1527). The Michigan Supreme Court denied petitioner leave to appeal. *People v. Smith*, 981 N.W.2d 479 (Mich. 2022).

Petitioner in his original and amended petitions seeks relief on the following grounds:

I. Denial of fair trial when trial court erroneously allowed the prosecutor to introduce other-acts evidence under M.R.E. [Michigan Rule of Evidence] 404(B); trial counsel failed to object.

II. Trial court's exclusion of evidence of DNA mixture based on the rape shield statute deprived petitioner of his constitutional rights to a fair trial, to confrontation, and to present a defense and counsel's failure to seek admission of this evidence.

III. Petitioner was denied his constitutional right to present a defense, to call witnesses against him, and a fair trial when the trial court refused to allow the defense to call police officer Dale Schmaltz to impeach [AH] with extrinsic evidence of a prior inconsistent statement.

IV. Petitioner was denied the effective assistance of trial and appellate counsel by their failure to present the unknown whereabouts of his DNA evidence.

V. Ineffective assistance of counsel for failure to conduct a thorough investigation and secure Tabitha Wade as a witness.

VI. Ineffective assistance of counsel for failure to move for suppression of corrupted DNA evidence.

VII. Petitioner was denied his right to confrontation when the trial court allowed DNA results and reports to be testified to by a witness who did not conduct the actual testing.

VIII. The cumulative effect of trial errors and the cumulative effect of counsel's deficient performance denied petitioner his rights to due process and a fair trial.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

4

362, 405-06 (2000).   An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

### A. Claim # 1.  The prior bad acts evidence claim.

Petitioner in his first claim argues he was denied a fair trial by the admission of prior bad acts evidence involving the sexual assault on AH that was irrelevant, inadmissible, more prejudicial than probative, and used in violation of M.R.E. 404(b)'s prohibition on the use of prior bad acts evidence to establish a defendant's propensity to commit a crime.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* at 68.  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle him to habeas relief. The Sixth Circuit observed that "the Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis in original).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting improper character evidence or evidence of prior bad acts is not cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502

U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law).  The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to relief on his first claim.

## B. Claims # 2 and # 3.  The right to present a defense and confrontation claims.

Petitioner in his second and third claims argues that the judge deprived him of his right to present a defense and confront the witnesses by the exclusion of evidence.

Respondent argues that petitioner's second and third claims are procedurally defaulted in part because although petitioner raised objections to the exclusion of the evidence, he failed to object on the grounds that the exclusion of the evidence violated his federal constitutional rights.

Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  "[F]ederal courts are not

required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's unpreserved right to present a defense and confrontation claims are related to his preserved claims. Because the same legal analysis applies to both the preserved and unpreserved claims, it would be easier to simply address the merits of the unpreserved claims.

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, the accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). And the Supreme Court has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). The Supreme Court gives trial court judges "wide latitude to exclude evidence that is

repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Id.* at 689-90 (cleaned up).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003).

In his second claim, petitioner alleges that the judge erred in restricting the testimony of Melanie Drayton, a Forensic Serologist with the Detroit Police Department Crime Lab in 1996, regarding potential evidence that BB had a consensual sexual encounter with another man in close temporal proximity to her attack, and the suggestion that there was evidence of another male donor to the DNA sample obtained from BB's rape kit.

The Michigan Court of Appeals rejected the claim on several grounds. First, the Michigan Court of Appeals concluded that petitioner misconstrued or misunderstood the evidence. The Michigan Court of Appeals noted that Kristopher Sarik from Bode Technologies testified that he obtained two profiles after testing BB's rape kit, but that these two profiles involved the victim's DNA and a single

male donor's DNA, which ultimately turned out to be petitioner's DNA. *People v. Smith*, 2019 WL 2235839, at *8-9.

Moreover, assuming that there was evidence of another male donor or evidence that the victim had recently had sex with another male, the Michigan Court of Appeals concluded that the exclusion of such evidence did not deprive petitioner of a fair trial. The Michigan Court of Appeals noted that the male donor's DNA was matched to petitioner. BB testified she did not know petitioner when the assault occurred, and petitioner did not claim that he had a consensual sexual relationship with BB. The Michigan Court of Appeals concluded that "the potential presence of other unidentifiable male DNA does nothing to diminish the inability to explain the presence of a full DNA profile attributable to defendant, when BB did not know or have any level of consensual interaction with defendant at the time of her attack." *People v. Smith*, 2019 WL 2235839, at *9. The Michigan Court of Appeals went on to hold:

> If as asserted, BB reported having engaged in a consensual sexual interaction with a known individual within a short time frame before the attack, the presence of that individual's DNA does not obviate the presence of the DNA of defendant. Further, defendant's attempt to elicit evidence from Drayton regarding a statement purportedly by BB and recorded on a form suggesting that BB had engaged in sexual activity with a known individual before the attack, was inadmissible under the rape-shield statute, 750.520j(1). The evidence obtained through later testing of the rape kit identified only two DNA profiles belonging to BB and defendant. Notably the sperm fraction identified a single male donor that was matched to defendant. As such, the trial court did not err in excluding testimony by Drayton regarding an unidentified form,

completed by an unidentified individual suggesting BB's recent sexual behavior under the rape-shield statute. In addition, considerable testimony was elicited, from various individuals, regarding the DNA testing and results obtained. The manner of obtaining the DNA samples, their processing and analysis was discussed in significant detail and does not support defendant's contention that another male donor was identified.

*People v. Smith*, 2019 WL 2235839, at *9.

The Supreme Court indicated that there are legitimate state interests behind a rape-shield statute, which include protection against surprise, harassment, and unnecessary invasions of privacy, that may allow the exclusion of relevant evidence under certain circumstances. *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991).

Petitioner is not entitled to habeas relief. The state courts did not unreasonably apply Supreme Court precedent "by determining that the interests served by the rape shield statute substantially outweighed the petitioner's interest in eliciting testimony that may have undermined . . . the victim's credibility." *Fuller v. Lafler*, 826 F. Supp. 2d 1040, 1057 (E.D. Mich. 2011), *aff'd sub nom.* 528 F. App'x 566 (6th Cir. 2013). The exclusion of this evidence did not deprive petitioner of a fair trial, because even if true, the fact that BB had consensual sex with another male close in time to the sexual assault would not have exculpated petitioner of the crime for which he was convicted. *See Dixon v. White*, 366 F. Supp. 2d 528, 538 (E.D. Mich. 2005), *rev'd on other grds* 210 F. App'x 498 (6th Cir. 2007). Petitioner is not entitled to habeas relief because he cannot show that evidence about another man's semen being taken

from BB's rape kit would have created reasonable doubt as to whether petitioner had sexually assaulted her nor would it have negated the fact that petitioner's DNA was recovered from BB after she reported being sexually assaulted. *See Rasmussen v. Filion*, 164 F. App'x 56, 58 (2d Cir. 2006). Petitioner is not entitled to habeas relief on his second claim.

Petitioner in his third claim argues that the trial court erred in refusing to allow defense counsel to call police officer Dale Schmaltz, who interviewed AH when her attack occurred, as a witness to impeach AH's trial testimony regarding how the events surrounding the sexual assault transpired.

In the present case, defense counsel impeached AH with her prior statements to Officer Schmaltz by reading off of the officer's police report. AH did not deny making these statement, admitting that she had spoken with the officer. (ECF No. 8-15, PageID.851). AH simply claimed that she could not remember making the statements or was not sure. AH did deny telling Officer Schmaltz the perpetrator put a hand over her mouth during the assault. (*Id.*, PageID.852).

The Michigan Court of Appeals rejected petitioner's claim as follows:

The report prepared by Schmaltz comprised hearsay because it involved an out of court statement by BB, and as such it was not admissible. The report "was an extra judicial statement [by Schmaltz] offered to prove the truth of the thing said (that [BB] had spoken the words imputed to [her])." As observed by the trial court, given the passage of more than 20 years since Schmaltz had spoken to BB, it was highly unlikely that Schmaltz could testify with any reasonable degree of certainty regarding his recollection of this brief conversation with

BB. As such, Schmaltz would have needed the report to be shown to him to refresh his memory. If a proper foundation were made and identification of a proper hearsay exception made, parts of the report might have been introduced into evidence or read to the jury. But this had already been accomplished by defense counsel's direct impeachment of AH's testimony with the same material. "The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." Thus, having directly impeached AH regarding the inconsistencies in her statements and testimony, the use of Schmaltz as an additional impeachment witness was unnecessary and cumulative. Further, it would seem intuitive that impeachment through cross-examination of AH would be more effective than through the use of other witnesses in terms of challenging AH's credibility.

*People v. Smith*, 2019 WL 2235839, at *13 (internal citations omitted).

"When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v. Jenkins*, 537 N.W.2d 828, 832 (Mich. 1995). However, "[t]he purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Id*. When a witness admits to making a prior inconsistent statement, as was the case here, extrinsic proof of the statement is inadmissible. *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 723 (6th Cir. 2005). Although AH's testimony may have contradicted her prior statement to Officer Schmaltz, she admitted on cross examination to making the prior inconsistent statement to the officer. Therefore, the state judge did not abuse her discretion when she refused to allow the defense to present cumulative, extrinsic evidence to impeach AH. *United States v. Flores*, No. 21-2974, 2022 WL 2812889,

at *4 (6th Cir. July 19, 2022).  Moreover, even if the judge erred in excluding the extrinsic impeachment evidence, it was harmless, "as the substance of the inconsistent statement was before the jury and admission of the [testimony] itself would have been cumulative." *Id.* at *5 (6th Cir. July 19, 2022) (cleaned up).

Furthermore, with respect to petitioner's claim that the exclusion of Officer Schmaltz's testimony violated his Sixth Amendment right to confront AH, the Sixth Circuit has noted that "[w]ith respect to a defendant's ability to present extrinsic evidence for impeachment, . . . the Supreme Court has not recognized the sweep of the Confrontation Clause to encompass the right to impeach an adverse witness by putting on a third-party witness." *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 596 (6th Cir. 2012) (cleaned up); *see also Farley v. Lafler*, 193 F. App'x 543, 548 (6th Cir. 2006) (state court's refusal to allow defense to impeach primary government witness with testimony of another government witness did not violate clearly established Supreme Court precedent because "neither the Supreme Court nor any federal court of appeals has ever held—or even suggested—that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems.") (cleaned up).  Thus, "a defendant is generally unable to establish a confrontation-clause violation where he is denied the opportunity to present extrinsic evidence that would impeach another witness." *Jordan*, 675 F.3d at 597.  Petitioner is not entitled to relief on his

third claim.

### C. Claims # 1-2, 4-7.  The ineffective assistance of counsel and confrontation claims.

Petitioner alleges he was denied the effective assistance of trial and appellate counsel.  In his seventh claim, petitioner also alleges a violation of his right to confrontation.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

As part of his first claim, petitioner argues that trial counsel was ineffective for failing to object to the admission of the 404(b) evidence involving AH.  The Michigan Court of Appeals rejected this claim because counsel did object several times to the admission of this evidence. *People v. Smith*, 2019 WL 2235839, at *6. Because counsel did, in fact, object to this testimony, petitioner's ineffective

assistance of counsel claim is without merit. *See, e.g.*, *Durr v. Mitchell*, 487 F.3d 423, 440 (6th Cir. 2007).

As part of his second claim, petitioner argues that trial counsel was ineffective for failing to seek the admission of evidence that there was a second male sperm donor in BB's case. The Michigan Court of Appeals rejected this claim because petitioner's counsel attempted to question Drayton about whether there was another male DNA donor but was stopped from asking these questions by the trial court's ruling on admissibility. *People v. Smith*, 2019 WL 2235839, at *10. Because the proposed evidence of a sexual relationship between the victim and another man was deemed by the Michigan Court of Appeals to be barred by Michigan's rape shield law, petitioner failed to show that trial counsel was ineffective in failing to present this evidence. *See Dufresne v. Palmer*, 876 F.3d 248, 258 (6th Cir. 2017) (appellate counsel's failure to argue that trial counsel should have interviewed and presented additional witnesses at trial for criminal sexual conduct was not deficient performance, and thus did not constitute ineffective assistance of counsel, where testimony by potential witness included on defense witness list would have been inadmissible under Michigan's rape shield statute).

Petitioner alleges additional ineffective assistance of trial counsel claims and an ineffective assistance of appellate counsel claim in his fourth through sixth claims.

As an initial matter, respondent argues that a portion of petitioner's remaining claims are unexhausted and procedurally defaulted because he raised them in his post-conviction motion for relief from judgment, but his appeal to the Michigan Court of Appeals was rejected as untimely. Because petitioner no longer has an available remedy to properly exhaust these claims, the claims should be deemed procedurally defaulted.

It is true that petitioner's post-conviction appeal was rejected as untimely. However, within the six month time frame for filing an appeal under M.C.R. 7.205, following the denial of his motion by the trial court on November 5, 2021, petitioner filed a notice with the Michigan Court of Appeals that he intended to file an appeal but needed an extension of time because of a COVID outbreak at his facility. (ECF No. 21, PageID.1760-1761). At the time of petitioner's post-conviction appeal, MI R ADMIN Order 2022-2 granted incarcerated individuals an extension of time to file an appeal with the Michigan Court of Appeals or the Michigan Supreme Court if they sent a letter to the court indicating their intent to appeal that included the following:

> (a) identify the trial court case number and, if applicable, the Court of Appeals case number that is the subject of the intended appeal,
> (b) state that the incarcerated person is unable to complete and submit the necessary materials because of restrictions in place due to COVID-19, and
> (c) be filed within the time for filing the application or claim of appeal under MCR 7.305(C)(2), MCR 7.204, or MCR 7.205.

Its unclear if petitioner's notice of intent to appeal conformed with these rules because he did not expressly state that he was unable to timely file an application for leave to appeal to the Michigan Court of Appeals because of COVID restrictions being in place where petitioner was incarcerated.

A habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). A federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). Likewise, as mentioned, *infra*, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. at 89. Petitioner's remaining claims are meritless; regardless of whether the claims have been properly exhausted or are procedurally defaulted, they fail on the merits.

Petitioner in his fourth and sixth claims alleges that trial counsel and appellate counsel were ineffective for failing to raise various challenges to the DNA evidence.

In his fourth claim, petitioner initially argues that trial counsel was ineffective for failing to obtain a DNA expert to challenge the prosecution's experts' findings on the DNA.  Petitioner raised this claim on his appeal of right in a supplemental *pro se* appellate brief that he filed on his own behalf.[2]  The Michigan Court of Appeals rejected this claim because petitioner "failed to make an offer of proof pertaining to the substance of any favorable testimony that such an expert would have offered." *People v. Smith*, 2019 WL 2235839, at *14.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).  Petitioner has offered no evidence to this Court that he had a DNA expert who would have testified that the DNA results were skewed or falsified.

Moreover, although defense counsel did not call an independent DNA expert, he did cross-examine the various prosecution witnesses about problems with the DNA evidence. Defense counsel got Kristopher Sarik from Bode Laboratories to

---

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry*, 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

admit that he obtained the rape kit from the Michigan State Police and not from the Detroit Police Department (the original investigating agency). Sarik noted that the rape kit had been sealed with evidence tape and he did not know how many people handled the rape kit. Sarik acknowledged that Bode Laboratories had been asked to analyze only certain swabs obtained from the victim and no other evidence. Sarik did not know whether the envelopes containing various items of evidence were sealed.   Sarik admitted that one envelope that was supposed to have genital swabbings in it only had gauze inside the envelope. Sarik admitted he did not know whether there had been additional swabs inside the rape kit that were now missing. Sarik testified that he received an envelope that was labeled vaginal swabs but that envelope was empty. Sarik also admitted that items that had not been tested could have contained another male's DNA. Sarik acknowledged that the temperature of the room where the DNA was stored could affect the integrity of the DNA. Sarik further admitted that an oral swab that was tested came back inconclusive for male DNA based on the limited amount of DNA on the swab. (ECF 8-13, PageID.637-648).

Heather Goff is a Forensic Biologist in the Michigan State Police's Forensic Laboratory who processed evidence for DNA. (ECF 8-14, PageID.659-60).  Defense counsel confronted Goff with the fact that although she testified that she put the DNA sample into CODIS [Combined DNA Index System] on April 30, 2015, her

report said she put it into the system a day earlier. (*Id.,* PageID.667-68). Goff said that the Detroit Police Department, and not the Michigan State Police, sent the DNA sample to Bode Laboratories. Goff indicated that the Detroit Police Department no longer had laboratory facilities to test DNA evidence although they used to. Although Goff did not personally know why the Detroit Police laboratory was shut down, she acknowledged that it had been audited by the Michigan State Police. (*Id.*, PageID.669-70).

Lisa Champion was another Forensic Scientist who worked for the Michigan State Police in their biology unit. (ECF No. 8-14, PageID.681). On cross-examination, Champion admitted that she did not do the actual DNA test on the buccal swab received from petitioner. Instead, it was done by a technician at the Northville laboratory. Champion did not witness the actual testing and could not testify whether proper testing protocol was followed. Champion admitted that the chain of custody report prepared in the case did not have a bar code on it, did not list the primary law enforcement agency, and had no information about the date and type of offense. Champion admitted that although she was able to make a comparison to petitioner's DNA from the sperm fraction obtained from the rape kit she was not able to do so from the epithelial fraction. Champion admitted that Bode Laboratories and the Michigan State Police follow different protocols and standards for testing DNA evidence. Champion did not know who collected the rape kit from AH, the

21

year it was collected, or whether standard testing procedures were followed. Champion could not rule out possible contamination or cross-contamination of that test. Champion did not know where AH's rape kit was stored.  Champion testified that there were a minimum of two DNA contributors from the samples obtained from AH but admitted that there could be more than two donors. (*Id.*, PageID.703-10).

Sergeant Royd Coleman worked in the Property Control Section for the Detroit Police Department. (ECF No. 8-14, PageID.725).  On cross-examination, Sergeant Coleman admitted that he had only worked in this unit since 2016. Sergeant Coleman had no knowledge about what happened to the various rape kits prior to his coming to work in the property control unit. He did not personally generate the reports dealing with the two rape kits in this case.  Sergeant Coleman admitted that over 11,000 rape kits had been stored in a warehouse by the Detroit Police Department. He did not know whether all of these rape kits had been tested.  Sergeant Coleman did not know if yearly audits had been conducted from 1996 to determine if the rape kits were where they were supposed to be.  Sergeant Coleman acknowledged that the rape kits in petitioner's case had been transferred several times but was unable to tell whether the kits had been transferred in person or by mail. (*Id.*, PageID.736-41).   On recross examination, Sergeant Coleman admitted he had no way of knowing how rape kits had been transferred to and from the property control division between 1996 and 2016. (*Id.*, PageID.745).

Melanie Drayton, as mentioned above, was a Forensic Serologist with the Detroit Police Department Crime Lab in 1996.  Counsel questioned her about the fact that she could not remember performing the test on BB's rape kit. She could not remember when the rape kit was returned to the Detroit Police Department.  She admitted that sperm samples were not taken from two other suspects to compare to the victim's vaginal swabs. Drayton acknowledged that this type of work was not done by the Detroit Police Department laboratory at the time.  Drayton removed cotton swabs from the vaginal swab collected at the hospital to test them, but she cannot remember whether she used an entire cotton swab or only a section of the swab to test it. Drayton admitted that she made no notation in her report about the condition of the rape kit when she received it.  Drayton resealed the rape kit after testing it and stated there should have been no reason for the seal on the kit to have been broken. (*Id.*, PageID.760-68).  On recross examination, she admitted she could not recall whether she changed gloves between testing the different samples to avoid cross-contamination. (*Id.*, PageID.779-80).

Oghenerhuemu Wanogho was a police officer assigned to the Wayne County Prosecutor's Sexual Assault Task Force. The task force's job was to look at untested rape kits, locate the victims, see if they want to proceed with their cases, and then find the actual suspects. (*Id.*, PageID.797-98). On cross-examination, Officer Wanogho admitted that the buccal swab that he sent to the Northville laboratory

incorrectly stated that the date of the sexual assault was September 28, 1998, when neither the assault on BB nor AH happened in 1998. Officer Wanogho admitted that the rape kits had been stored in a warehouse but he had no knowledge of the temperatures that the kits were stored at. He also was unable to obtain the medical records for BB or AH. (ECF No. 8-15, PageID.822-25).

Defense counsel's decision to cross-examine the various witnesses about the potential deficiencies and shortcomings with the DNA tests performed, in lieu of calling an independent DNA expert, is a reasonable strategy that defeats petitioner's claim. The Supreme Court has noted that: "in many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter*, 562 U.S. at 111. Defense counsel's decision to cross-examine the witnesses about problems with the DNA testing, instead of calling an expert witness for the defense, was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005).

In his related sixth claim, petitioner argues that trial counsel was ineffective for failing to move to suppress the DNA results. Counsel, however, did object to admission of the exhibit containing the DNA comparisons because the prosecutor failed to properly lay a foundation and chain of custody for the DNA. (ECF No. 8-14, PageID.697–701). Because counsel did, in fact, object to the admission of the

DNA evidence, the related ineffective assistance of counsel claim is without merit. *See, e.g.*, *Durr v. Mitchell*, 487 F.3d at 440.

Petitioner in his fifth claim argues that trial counsel was ineffective for failing to call Tabitha Wade as a witness.

Petitioner is not entitled to relief on this claim for several reasons.

First, as the Michigan Court of Appeals noted in its opinion, petitioner failed to provide an offer of proof to that court concerning Ms. Wade's proposed testimony. *People v. Smith*, 2019 WL 2235839, at *15. Petitioner is not entitled to relief. He failed to provide to the Michigan courts or to this Court an affidavit from Ms. Wade concerning her proposed testimony and willingness to testify on his behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner did not offer, either to the Michigan courts or to this Court, any evidence beyond his own assertion regarding whether Ms. Wade would have been able to testify and what the content of her testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. Wade to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, this Court would be unable at this point to entertain any affidavits from Ms. Wade. The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). That would preclude this Court from considering any new evidence that the petitioner would even want to present at this point in support of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record). Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling Ms. Wade was strategic or that the outcome of the trial would have been different had this evidence been presented.

Secondly, the only evidence that the Michigan Court of Appeals had available concerning Ms. Wade was that she spoke to the police around the time of the sexual assault on BB. The Michigan Court of Appeals rejected the claim finding that any such information Ms. Wade gave to the police was not exculpatory:

> The only evidence or information available is that the police did speak with Wade at the time of the events involving BB. Wade indicated that she observed someone, who might be the perpetrator, in the area of BB's residence on the relevant date and time, dressed in accordance with the clothing description obtained by police. BB described her perpetrator to police as wearing a hoodie in a manner that obstructed his facial features. No information was provided to suggest that Wade's testimony would serve to benefit defendant if her only observation was

26

of the type of clothing worn by an individual she saw and not a definitive assertion that the individual she observed was not defendant. There is no information regarding Wade's physical proximity to the individual observed, the duration of her observation, or whether the conditions existing at the time of her observation assisted to clarify or hinder her ability to discern any details regarding the individual's appearance. Even if Wade observed an unidentified individual in the vicinity at the approximate time of the occurrence of the attack on BB, this fact does not obviate defendant's concurrent presence, albeit unobserved by Wade. For reasons of trial strategy, defense counsel may have elected to not present Wade as a witness for defendant. This decision will not be considered in hindsight by this Court to evaluate the competence of defense counsel.

Further, if the value of Wade's testimony was to suggest that an individual, other than defendant, was the possible perpetrator and in the vicinity at the relevant place and time, this information was made known to the jury through the testimony of Plieth and BB, who testified that her mother saw someone running in the vicinity when BB appeared at her parents' home on the night of the attack. As such, defendant's assertion of ineffective assistance of counsel cannot be established because defendant was not deprived of a substantial defense.

*People v. Smith*, 2019 WL 2235839, at *15 (internal citations omitted).

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). Defense counsel also has no duty to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d 359, 381-82 (6th Cir. 2010). For the reasons stated by the Michigan Court of Appeals, petitioner failed to show that Ms. Wade would have provide exculpatory evidence. Petitioner is not entitled to relief on his fifth claim.

In his seventh claim, petitioner alleges that the trial court violated his right to confrontation by allowing a witness to testify about DNA testing that she did not perform and that counsel was ineffective for failing to object.

Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004).  The Supreme Court has held that scientific or laboratory reports which are admitted to prove a fact are testimonial statements, for purposes of the Sixth Amendment right to confrontation. *Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-311 (2009).  Because they are testimonial, the reports cannot be admitted into evidence unless the analysts who wrote them are subject to cross-examination. *Bullcoming*, 564 U.S. at 663; *Melendez-Diaz*, 557 U.S. at 311.

Petitioner alleges that the DNA test results from the similar-acts case (in which AH was a victim) were testified to by someone who did not author the report. He fails, however, to point to anything in the record that supports his claim.  Contrary to petitioner's assertion, the record shows that Lisa Champion testified that she was the forensic scientist who compared the DNA sample from AH's case to petitioner's known DNA sample and that she authored a report reflecting the results of that

comparison. (ECF No. 8-14, PageID.691–696). On cross-examination, Champion did testify that she did not process the DNA from the known buccal swab from petitioner, another technician processed the swab because the swab was known to have come from him. (*Id.*, PageID.703). Petitioner failed to show that his confrontation rights were violated because Champion testified about the report she prepared and was subjected to cross-examination. Because Lisa Champion's testimony did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See, e.g.*, *U.S. v. Johnson*, 581 F.3d 320, 328 (6th Cir. 2009). Petitioner is not entitled to relief on his seventh claim.

Finally to the extent that petitioner alleges that appellate counsel was ineffective for failing to raise his fourth through seventh claims on his appeal of right, he is not entitled to relief.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that

appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Petitioner's fourth through seventh claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

### D. Claim 8. The cumulative error claim.

Petitioner lastly contends that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his cumulative error claim. *Id.*

### E. The motion for an evidentiary hearing and the appointment of counsel is denied.

Petitioner filed a motion for an evidentiary hearing and for the appointment of counsel.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001). In light of the fact that petitioner's claims are meritless, he is not entitled to an evidentiary hearing. There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Because petitioner's claims lack merit, the Court will deny petitioner's request for the appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

## IV. CONCLUSION

Before petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

Accordingly, IT IS ORDERED that:

(1) the petition and amended petition for a writ of habeas corpus (ECF Nos. 1, 14) are DENIED WITH PREJUDICE.

(2) A certificate of appealability is DENIED.

(3) petitioner is granted leave to appeal *in forma pauperis.*

(4) the motion for an evidentiary hearing and the appointment of counsel (ECF No. 16) is DENIED.

**SO ORDERED.**

s/Bernard A. Friedman

Dated: October 13, 2023             Bernard A. Friedman
       Detroit, Michigan            Senior United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on October 13, 2023.

Errol O. Smith #333785                    s/Johnetta M. Curry-Williams
SAGINAW CORRECTIONAL FACILITY     Case Manager
9625 PIERCE ROAD
FREELAND, MI 48623